DAPPER *v.* SMITH.

ELECTIONS — PRIMARY LAW— CONSTITUTIONALITY — CANDIDATES — OATH.

The Kent county primary election law (Act No. 326, Local Acts 1903), which requires in section 3 that, before the name of any candidate shall be placed on the ballot at a primary election, such candidate shall on oath declare his purpose to become such, violates section 1 of article 18 of the Constitution prescribing the oath which shall be required of public officers, and providing that no other oath shall be required as a qualification for any office, since thereby voters are precluded from choosing as a candidate one who declines to himself seek the office.

Certiorari to Kent; Wolcott, J. Submitted October 28, 1904. (Calendar No. 20,800.) Decided October 28, 1904.

Mandamus by Emil A. Dapper to compel Connor H. Smith, county clerk of Kent county, to certify the names of candidates chosen by a mass convention to a place on the official ballot. There was an order denying the writ, and relator brings certiorari. Reversed.

*Emil A. Dapper,* in pro. per.

*William B. Brown,* for respondent.

PER CURIAM. The relator applied to the circuit court for mandamus to compel the respondent to certify the names of the candidates chosen by the socialist party of Kent county in a mass convention to the commission as entitled to a place on the official ballot. This application was denied, and certiorari is brought to review the ruling of the circuit judge. A prompt decision is indispensable to the preservation of relator's rights. Were this not so, we should feel that the grave questions involved not only merited, but demanded, a much fuller discussion than we are able to give them.

Briefly stated, the question involved is whether section 3 (Act No. 326, Local Acts 1903) of the act providing for primary elections in Kent county is in conflict with the Constitution, for the reason that it denies a place on the ballot to any candidate unless such candidate will declare on oath, in advance, the fact that he is a candidate for the office.

Section 1 of article 18 of the Constitution prescribes the oath which shall be required of public officers, and further provides that no other oath, declaration, or test shall be required as a qualification for any office or public trust.

This provision is not one designed for the benefit of the aspirant for public station alone; it is in the interest of the electorate as well. The provision of this law which requires that, before the name of any candidate shall be placed upon the ballot at the primary election, such candidate shall on oath declare his purpose to become such, excludes the right of the electorate of the party to vote for the nomination of any man who is not sufficiently anxious to fill public station to make such a declaration. The man who may be willing to consent to serve his State or his community in answer to the call of duty when chosen by his fellow citizens to do so is excluded, and the electorate has no opportunity to cast their votes for him. It is not an answer to this reasoning to say that the electors may still vote for such a man by using "pasters." We cannot ignore the fact that parties have become an important and well-recognized factor in government. Certain it is that this law fully recognizes the potency of parties, and provides for party action as a step toward the choice of an officer at the election. The authority of the legislature to enact laws for the purpose of securing purity in elections does not include the right to impose any conditions which will destroy or seriously impede the enjoyment of the elective franchise. *Attorney General* v. *Detroit Common Council*, 58 Mich. 213.

We cannot escape the conclusion that the provision in question does most seriously impede the electors in the

choice of candidates for office, and that it is in conflict with the provisions of section 1 of article 18 of the Constitution. It by no means follows that reasonable provision may not be made by legislation for an initiative in placing upon the ballot the names of those to be voted for, as, for instance, by requiring a petition by a stated percentage of the voters of the party. But this provision goes further, and precludes the voters from choosing as a candidate one who declines to himself seek the office.

The order of the court below will be reversed and the writ granted.