**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0607n.06**
**Filed: July 19, 2005**

**04-1510**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

GARY KULAK,                                    )
                                               )
    Plaintiff-Appellant,                       )
                                               )
v.                                             )  ON APPEAL FROM THE UNITED
                                               )  STATES DISTRICT COURT FOR THE
CITY OF BIRMINGHAM et al.,                     )  EASTERN DISTRICT OF MICHIGAN
                                               )
    Defendants-Appellees.                      )

Before: NORRIS and DAUGHTREY, Circuit Judges, and JORDAN,[*] District Judge.

**PER CURIAM.** The plaintiff, Gary Kulak, was removed from his position on the planning board of the city of Birmingham, Michigan, by a vote of the city commission. He sued the city and several of the members of the commission, charging violation of his due process rights under the federal and state constitutions and seeking an injunction restoring him to his position. The district court dismissed the complaint after finding that Kulak had no property rights in his position on the board and that he had not alleged a liberty interest. Because the district court's order was based on a thorough and accurate reading of the law, we affirm the lower court's judgment.

---

[*]The Hon. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was appointed by the Birmingham city commission to serve a second three-year term on the Birmingham city planning board in March 2003. The function of the planning board is to "advise the city commission in regard to the proper development of the city." Ordinance 82-33.

According to the plaintiff, there was a growing political division within the city over the direction of development. One side "supported free development, guided solely by the latest whimsical desires of developers," and the other "sought a more balanced approach." The former group created an internet publication called "Buzz," in which, according to the plaintiff, he came into criticism for his "adherence to, and upholding of" city zoning regulations. The group published articles calling for the plaintiff's and other planning board members' removal.

The defendants, conversely, submit that during the time leading up to the plaintiff's second appointment and continuing afterward, there was a growing number of complaints regarding his behavior. These included claims that he had created a hostile work environment for municipal clerical workers, derided and berated people who appeared before the board, and aggravated other board members. The City Planner eventually questioned whether the plaintiff's conduct met the standards of the board's code of ethics.

In November 2003, four new city commissioners were elected, and on November 24, the city commission voted to schedule a hearing on the plaintiff's removal from the board under a city ordinance that provided for such action. The commission sent copies of all complaints regarding the plaintiff to him and requested his response by January 7, 2004. The hearing was set for January 12. On January 5, the commission amended the board-member removal ordinance. According to the defendants, "[c]oncerns had been raised about the definition of 'cause,' the lack of a definition and the lack of a process of how any public hearing would be conducted by the City Commission." The plaintiff argues, however, that the amendment "inserted an illusory definition of 'cause,' which effectively eliminated the cause requirement needed to remove . . . members" and was passed "for the express purpose of removing [the plaintiff]."

After passage of the amendment, the plaintiff's hearing was rescheduled to January 26, 2004. He was advised of his choice to conduct it in private or public, and he elected the latter. The plaintiff submitted a one-page response to the complaints that had been forwarded to him, denying any wrongdoing or failure to perform his duties as a board member. At the hearing, the plaintiff's attorney challenged the amendment as well as the complaints regarding the plaintiff. The commission voted 5-2 to remove him.

The plaintiff filed suit two days later, on January 28, 2004, naming as defendants the City and five commission members. He charged them with violating his Fifth and Fourteenth amendment rights under 42 U.S.C. § 1983 and his rights under the Michigan

state constitution; requested a declaratory injunction that the amendment to the removal ordinance violated the Michigan Home Rule Act; and requested an order prohibiting destruction of any city commission communications pertaining to his removal, expedited discovery, and a hearing on whether he should be restored to the board until the resolution of the suit.

The district court granted an *ex parte* restraining order and scheduled a hearing to determine whether to continue it. On February 11 the court continued the *ex parte* order, denied a temporary restraining order, and issued an order to both sides to brief the question of "whether Plaintiff's allegations implicate a constitutionally protected liberty or property interest. The district court later issued an opinion and order that dismissed with prejudice all of the plaintiff's federal claims and requests for declaratory and injunctive relief and dismissed without prejudice the state law claims.

The court determined, based on Michigan Supreme Court case law that the plaintiff did not have a property interest in his position on the planning board that was subject to due process protections. Though the plaintiff had not asserted in his complaint that he had been deprived of a liberty interest, he did make this argument in his response to the court's order to show cause. The court rejected this claim based on its determination that the plaintiff did not allege any of the five elements necessary to show the deprivation of a liberty interest or the denial of a name-clearing hearing as outlined by this Court in *Quinn v.*

*Shirey*, 293 F.3d 315 (6th Cir. 2002). Having dismissed the plaintiff's federal claims, the court declined to exercise supplemental jurisdiction over the state law claims.

## DISCUSSION

The plaintiff claims that the district court erred in finding that the board position did not confer a property interest. But the district court based its finding on uncontroverted case law from the Michigan Supreme Court. In *Attorney General ex rel Rich v. Jochim*, 58 N.W. 611 (Mich. 1894), the court considered a challenge brought by three Michigan state officers to their removal by the governor. The court upheld the removal and ruled that "[a] public office cannot be called 'property' within the meaning of . . . constitutional [due process] provisions." 58 N.W. at 613. This case was cited by the Supreme Court in *Taylor v. Beckham*, 178 U.S. 548 (1900), when it announced "public offices are mere agencies or trusts, and not property as such. . . . In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." 178 U.S. at 577, n.4. The Michigan Supreme Court has affirmed its holding in *Jochim* in subsequent decisions. *See Robbins v. Wayne County Bd. of Auditors*, 99 N.W.2d 591, 593 (Mich. 1959) ("the incumbent of a public office has no vested property interest therein"); *Jeffries v. Election Comm'n. of Wayne County*, 239 N.W. 546, 548 (Mich. 1940).

According to the plaintiff, Michigan law grants him the right not to be removed without cause. The Michigan Home Rule Act, M.C.L.A. 117.1 *et seq*, provides, in relevant part, "[t]he term of a public official shall not be shortened . . . beyond the period for which

he is elected or appointed, unless he or she resigns or is removed for cause, if the office is held for a fixed term." M.C.L.A. § 117.5(d). However, the opinion in *Rich v. Jochim* states clearly that "cases [to the effect] that removals from office cannot, in some instances, be made except upon cause shown, upon notice, specific charges, and after a hearing in its nature judicial . . . simply hold that removals are limited by the power of the people or legislature, through the constitution or statute, *not that a vested property right is involved in the holding of office. . . .*" 58 N.W. at 614 (emphasis added). Furthermore, the city commission conducted a hearing during which at least 15 complaints regarding the plaintiff's conduct were introduced, supporting a finding of cause to terminate.

The plaintiff next claims that the district court erred in determining that he did not have a liberty interest betrays a misreading of the law as well as the court's opinion. We ruled in *Quinn* that a stigmatizing statement must satisfy five criteria to give rise to a deprivation of a liberty interest: being made in conjunction with termination from employment; addressing more than merely improper or inadequate performance, incompetence, neglect of duty or malfeasance; publication that is voluntary; and falsity. 293 F.3d at 320. If all of these elements exist, a person is entitled to a name-clearing hearing. "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Id.*

As the district court observed, the plaintiff neither alleged that he had a liberty interest nor requested a name-clearing hearing. Therefore, the district court properly dismissed the claim.

## CONCLUSION

For the reasons set out above, we **AFFIRM** the district court's judgment.